George D. BROWN, Appellant,

v.

Arthur CLARY, d/b/a Clary Poultry & Egg Company et al., Appellees.

No. 10594.

Court of Civil Appeals of Texas.

Austin.

July 2, 1958.

Rehearing Denied July 30, 1958.

Paul Petty, Ballinger, for appellant.

Croslin & Pharr, Lubbock, for appellees.

ARCHER, Chief Justice.

This is a plea of privilege case.

Appellant sued appellees for $3,094.20 as the value of 4,887 chickens sold and delivered to appellees, and that appellant has demanded payment but appellees have not paid the sum due.

Pleading in the alternative appellant contends that if he be mistaken in the allegation that appellees owe for the chickens, that appellees owe the sum of $3,094.20 for the chickens, because the chickens were sold and delivered to appellees in Runnels County and placed on the appellee Clary's truck, and were then in the sole and exclusive possession of appellees and were being moved by truck to Winters, Texas, to be weighed, and that in driving the truck over the public road, appellee Smith, the driver, carelessly operated such truck in such a manner as to cause it to turn over and kill the greater part of the chickens, and plead negligence in the operation of the truck and the proximate cause of appellant's damages.

Appellees filed separate pleas of privileges, alleging their residence to be in Lubbock County, Texas, and not in Runnels.

These pleas were seasonably controverted and a hearing was had and the pleas were sustained, and it is from such orders that appellant makes this appeal.

Appellant relies on Subd. 9 (Crime or Trespass) of Art. 1995, Vernon's Ann.Civ. St., as an exception to hold venue in Runnels County.

■ The nature and character of a suit is to be determined from the allegations contained in the petition.

■■ The purpose of the venue statute is to give a defendant the right to defend suit in the county of his domicile, except under the enumerated exceptions, and is strictly construed favorably to rights of defendants and the burden was on appellant to plead and prove that his cause comes within the exception to the article, and this the Trial Court found he did not do.

At the hearing on the pleas and the controverting pleas, the appellant testified as to his residence and of the sale of the chickens, and the delivery thereof to appellees, and in particular as follows:

"Q. About five days before June 15, 1956, did you have occasion to phone Mr. Clary at Lubbock about selling him some chickens? A. I did. We had two houses. We phoned him, I would say, around five days ahead and he set the date he would pick them up and he picked up one house and then he come back the next night and picked up the other one.

"Q. By 'house' you mean you had a broiler house, large broiler house where you would raise the chickens? A. Yes, sir.

"Q. You say you sold him two houses of chickens and he picked one up one night and the other house the second night during the month of June '56? A. That's right."

Testimony was given as to the wreck and the resulting damage, and that about 1,000 of the chickens were taken by Mr. Clary to Lubbock and the dead chickens were taken to a rendering plant, and of a conversation Mr. Brown had with Mr. Clary.

On cross examination appellant testified as follows:

"Question by Mr. Solsbery: Q. Going back to the original arrangements with Mr. Clary, Mr. Brown, you stated that he took the position that he did not own the chickens until they were weighed at the scales? A. After the wreck he did, yes, sir.

"Q. After the wreck? A. Yes, sir.

"Q. Now, what was your understanding as to when title to the chickens would pass; when did Arthur Clary own them? A. When they went into possession on his truck.

"Q. There at your farm? A. Yes, sir.

"Q. At that moment it was your understanding those chickens were owned by Mr. Clary? A. That is correct.

"Q. However, you stated that after the accident Mr. Clary took the position that the chickens were not his until they had been weighed at the scales at Winters? A. Well, he never said that to me, but he referred that to the insurance company.

* * * * * *

"Q. Now, let's get back—let me understand one more time, it was your understanding that when you delivered the chickens to Mr. Clary there at your farm you no longer owned those chickens? A. No, sir.

"Q. The only interest you had in those chickens were determining how much they weighed at the scales over in Winters at Mr. Green's scales in order that you could settle on the weight? A. That is correct.

"Q. But you felt you did not own the chickens after they were picked up over at your farm? A. No, sir.

"Q. That at that point Mr. Clary only owed you money and the chickens were his? A. That is correct."

Appellant was the only witness to testify.

No findings of fact or conclusions of law were requested or made by the Trial Court. It is presumed that the findings and conclusions were in favor of and in support of the judgment. Brown Company v. Terrell, Tex.Civ.App., 310 S.W.2d 757, 761, er. ref., N.R.E.

. The Trial Judge was the judge of the credibility of the witness, and, having heard the testimony, was justified in sustaining the pleas of privilege in view of the pleadings and the evidence. The statement of what Clary told the Insurance Company was hearsay.

The judgment of the Trial Court is affirmed.

Affirmed.